# CHARLESTON.

## WALLACE v. McCARTY.

### February 23, 1875.

1. Where an undertaking taken by an officer under the provisions of the first section of chapter one hundred and forty-two of the code of West Virginia, of 1868, shows upon its face that the *fieri facias* was levied upon various articles of personal property which were valued by the officer, in the aggregate, at $626, and that the day fixed in the undertaking for the delivery of a large part of said property had passed at the execution of the undertaking—the undertaking is not good, under the provisions of said chapter of said Code, but is materially defective and irregular And in a case, upon notice motion for judgment upon such undertaking, under said chapter, it is competent for the court to quash such undertaking, on motion of the defendants.

2. It is error for the court to refuse to quash such undertaking and proceed to give judgment thereon against the defendants for $626, the value of the property stated in the undertaking.

*Supersedeas* to a judgment of the circuit court of Pocahontas county rendered on the 11th day of March, 1872, in a proceeding therein pending, in favor of Matthew Wallace against John W. D. McCarty, Alvin Clark, John D. Kinnison and Andrew J. Overholt. The other material facts appear in the statement of the case by the Court. The *supersedeas* was granted on the petition of said defendants below.

The Hon. Joseph M. McWhorter, judge of said circuit court, presided at the trial.

*Robert F. Dennis* and *Samuel Price* for the appellants.

*Adam C. Snyder* for the appellee.

25

1875.
January Term.    HAYMOND, PRESIDENT :

Wallace
v.
McCarty.

The plaintiff, prior to the March term, 1872, of the circuit court of the county of Pocahontas, caused a written notice to be served on the defendants that he would, at that term of said court, move the court for judgment against defendants for $626, with interest thereon from the 1st day of July, 1871, upon an undertaking entered into by them on the 1st day of July, 1871, for the delivery of certain personal property therein named.

At the said March term, 1872, by consent of the parties by their attorneys, the cause was ordered to be docketed and continued until a subsequent day of the term. On the next day, which was the 9th day of March, 1872, the parties appeared in court, and the defendants moved the court to quash the undertaking, but the court overruled the motion ; and thereupon the defendants filed a plea in writing, denying the execution of the undertaking, to which the plaintiff replied generally. This is disclosed by the order of the court made on the 9th day of March, 1872. The court heard the evidence adduced, and decided the cause without the interposition of a jury, and rendered a judgment against the defendants on the undertaking for the sum of $626, with interest from the 29th day of July, 1871, and the costs of the motion. The judgment was not rendered until the 11th day of March, 1872. On the trial of the motion the defendants filed a bill of exceptions to the opinion of the court. The undertaking, among other things, appears in the bill of exceptions, but is not there correctly copied ; but by agreement of the attorneys for the parties, in this Court, the original, as filed in the clerk's office and as it was when the court gave judgment thereon, was, at the hearing of the cause, presented to this Court to be examined and considered in connection with the record, and as part of the cause. The undertaking, on its face and as it appears in the record, is substantially, in most particulars, according to the form prescribed by the first section of chapter one hundred and forty-two

of the Code of this State. But the undertaking, as

recited in the record, after reciting the property levied on, proceeds thus, viz: " Now, .therefore, we, and each of us, undertake that the said . J. W. D. McCarty, (the execution debtor,) will deliver the said property to the said sheriff, at Mill Point, on the 29th day of July, 1871, then and there to be sold to satisfy such execution ; and in case he fails to do so that we, or either of us, will pay to the said Matthew Wallace the sum of $626. Three horses to be delivered at Huntersville on the 7th day of August, 1871,—the sum of $626. Given under our hands this 31st day of July, 1871." According to the face of the undertaking, as the original appears, " four cows, three calves, thirteen hogs, one wagon, and the half of one wagon," was the property levied on and to be delivered ; but immediately after are these words, all of which are crossed out, but can still be read as originally written, " and three," with the word " two " written immediately above it, " head of horses, the horses to be delivered at Huntersville, in front of the court house door, on the 1st day of August, 1871," &c. The facts proven, as certified by the court, show " that three horses were valued by the deputy sheriff, and, according to his valuation placed upon the property, it took three horses, together with the other property, to make the sum mentioned in said undertaking, and that valuation was inserted in the undertaking when it was signed, which signing occurred some days before the delivery thereof, except as to the defendant Overholt; that the defendant McCarty had promised his attorney to prepare the undertaking, with a recital therein, among other things, that three horses had been levied on, but that while the undertaking was in the possession of said McCarty, and before the time of delivery to the deputy sheriff, the word 'three' was erased and 'two' substituted therefor ; that at the time of the acknowledgment and delivery of said undertaking all the undertakers were convened at the request of the deputy sheriff, McKeevar, when the defendant Over-

1875.
January Term.

Wallace
v.
McCarty.

holt signed the same; and after the same had been ac-knowledged and delivered by the several undertakers, who had all left the room and were standing on the out-side of the house, excepting the defendant, McCarty, who was still present, the said deputy sheriff changed the word 'two' to 'three,' thus inserting *three* horses in-stead of *two*."

The foregoing facts were proved by the plaintiff and the defendants then proved, "that when they signed, ac-knowledged and delivered the said undertaking to the said deputy sheriff there were only two horses men-tioned and named in said undertaking; that after they had signed, acknowledged, and delivered said undertak-ing the said deputy sheriff changed the word two to three and inserted three horses in said undertaking; that after the same was thus altered by the said deputy sheriff, it was not re-acknowledged or re-delivered by the said un-dertakers."

From the face of the undertaking it appears that the day specified for the delivery of a considerable part of the property had passed when the undertaking was exe-cuted—that is all the property mentioned in the under-taking except the horses—and the value of this property constituted a part of the value placed upon all the prop-erty including the horses, to-wit: the said $626.

The undertaking provided for by the Code of 1868, takes the place of the forthcoming bond provided for by former laws. The first section of chapter one hundred and forty-two of the Code of 1868, provides that, "The sher-iff or other officer levying a distress warrant, or a writ of *fieri facias* issued from the office of the clerk of a circuit court, may take from the debtor an undertaking signed by himself or by some person for him with one or more good securities in from or effect as follows, viz:

A. B., plaintiff,   } Undertaking for delivery of pro-
      v.         } perty.
C. D., defendant.   }

Whereas the sheriff of the county of ——— (or other

officer as the case may be) by virtue of a writ of *fieri facias* (or distress warrant, as the case may be) against the property of the said C. D. has levied upon the following property, to-wit : (here describe the property :) Now, therefore, we, and each of us, undertake that the said C. D. will deliver the said property to the said sheriff (or other officer,) at —— on the —— day of ———, then and there to be sold to satisfy said execution (or distress warrant ;) and in case he fails to do so, that we, or either of us, will pay to the said A. B. the sum of —— dollars. Given under our hands, this —— day of ———.

The sum specified in such undertaking shall be the true value of the property levied on, to be ascertained and fixed by the sheriff or other officer making the levy. Upon the giving of the undertaking, as herein provided, the property so levied upon shall be permitted to remain in the possession of the debtor at his risk."

The third section of said chapter provides that "if the property, or any of it, mentioned in the undertaking be not delivered as therein provided, the officer, unless. payment be made of the amount due on the execution or· warrant, including his fees and commissions, shall forthwith return the said undertaking to the clerk's office· from which the execution issued, or if it be a distress warrant, to the clerk's office of the circuit court of the county in which such warrant was issued. The clerk shall indorse on the undertaking the date of its return ; and against such of the persons who signed the same as· may be alive when it is so returned, it shall have the· force of a judgment. But no execution shall issue thereon under this section."

The fourth section of the same chapter provides, that "the persons signing said forfeited undertaking shall be liable for value of the property therein mentioned, not delivered as aforesaid, with interest on such value from the date of the undertaking. And the payee in such undertaking, or his assignee or personal representative,

may recover said sum and interest, or so much thereof as may be necessary to satisfy his demand against the defendant in the execution or warrant, with costs, by action or motion against the persons signing said undertaking. And in case the said payee fail for any cause to recover a judgment on said undertaking, or to collect the amount specified in any such judgment, or any part thereof, he may proceed against the defendant in the original judgment, for the amount remaining unpaid in the same manner as if said undertaking had not been given."

The sections of the Code which have been quoted, as well as the prescribed form of the undertaking, evidently contemplate that the property valued by the officer, the aggregate value of which shall be inserted in the undertaking, shall be delivered to the officer at a day in the future, and that the undertaking shall be for the delivery of the property, so valued, at a future day, and not for the payment of the value in whole, or in part, except upon failure to deliver.

In the case before us a large portion of the property, valued according to the terms of the undertaking, could not be delivered on any day in the future, because the day fixed for its delivery, in the undertaking, had passed at the date of the undertaking. And the effect of the undertaking was for the payment, at least, the value of that part of the property, if not the whole $626—the value of the whole property.

In the case of *Pleasants v. Lewis*, 1 Wash. 273, it was decided that "a delivery of part of the property is not a performance of the condition of a forthcoming bond, but if the sheriff receive and sell what is delivered the amount is to be credited on the bond."

There is no proof that the thirty-first day of July is not the true date of the undertaking, or that the date inserted and appearing in the undertaking was inserted by mistake. The date of the undertaking, as shown on its face, is the 31st day of July, 1872. As the case

.stands that must be taken as the true date.  It was com-petent for the court to quash a forthcoming bond for de-fects and irregularities.  *Downman v. Chinn, Exor.*, 2 Wash. 189 ; *Couch v. Miller*, 2 Leigh, 545.  In each of these cases the bond was quashed on motion of the defendant. The undertaking in this case is substantially defective and irregular.  It is not such an undertaking as is pre-scribed by the statute in such cases, but is materially and fatally different and variant therefrom.  The proceeding by notice and motion is a statutory proceeding, exclu-sively, and the court should have quashed the under-taking when moved so to do by the defendants.

The one hundred and twenty-first chapter of the Code of West Virginia provides that "on a motion when an issue of fact is joined, and either party desires it, or when in the opinion of the court it is proper a jury shall be impannelled, unless the case be one in which the re-covery is limited to an amount not greater than $20 exclu-sive of interest."  In the case of *Burke, Admr. &c., v. Levy's Exors.* 1 Rand. 1 it was decided that "when *non est factum* is pleaded to a motion on a forthcoming bond the court may render judgment without the intervention of a jury to try the issue at their discretion."  This decision was made before the enactment of the present statute. But in *Claflin & Co., v. Steenbock & Co.*, 18 Gratt., 842, it was held that "On a motion to abate an attachment on the ground that it was issued on false suggestion and without sufficient cause, the plaintiff declining to express any wish for a jury, and the defendant expressing a wish that a jury might be dispensed with, and that the court should hear and decide the case ; the court should hear and decide it."  The decision was made under the last named section which is in the code of Virginia.  Sec. 8 p. 708.

Upon a motion for judgment upon a forthcoming bond if there is an issue of fact made by the pleadings and neither party ask for a jury the court may try it or direct a jury, either, in the exercise of its discretion.  "No for-

mal issue need be joined on a motion on a forthcoming bond, as the pleadings may be *ore tenus* and the court may pronounce judgment on the evidence." *McKinster v. Garrott*, 3 Rand. 554. Where either party desires a jury the better practice is to make up an issue of the fact to be tried.

Other questions were raised and argued at the hearing of this cause before this Court, but under the view taken of the undertaking, upon its face, they do not properly arise for determination. As to whether the undertaking might be held good at common law is not determined.

For the foregoing reasons the said judgment of the circuit court of the county of Pocahontas, rendered in this cause on the 11th day of March, 1872, must be reversed and annulled and the plaintiffs in error, recover against the defendant in error, (Mathew Wallace) their costs in this Court expended. And this Court proceeding to give such judgment as said circuit ought to have given it is considered that the finding of said circuit court in the cause be set aside and that the undertaking filed in this cause be quashed and that this cause be dismissed and that the defendants recover against the plaintiff their costs about their defence in this cause expended.

The other Judges concurred.

JUDGMENT REVERSED AND CAUSE DISMISSED.